UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |  |
|---|---|---|
| YING LIANG DENG,<br>    Petitioner,<br><br>   v.<br><br>MICHAEL NESSINGER, *Warden,<br>Wyatt Detention Facility*; PATRICIA<br>HYDE, *Field Office Director, U.S.<br>I.C.E. Enforcement and Removal<br>Operations, Boston Field Office*;<br>MICHAEL KROL, *HSI New England<br>Special Agent in Charge*; TODD<br>LYONS, *Acting Director, U.S. I.C.E.*;<br>and PAMELA BONDI, *U.S. Attorney<br>General*,<br>    Respondents. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 26-cv-113-JJM-AEM |

# MEMORANDUM AND ORDER

JOHN J. MCCONNELL, JR., United States District Court Chief Judge.

Ying Liang Deng brings this habeas petition pursuant to 28 U.S.C. § 2241, arguing that Immigration and Customs Enforcement ("ICE") acted unlawfully when it revoked his Order of Supervision and re-detained him at the Donald W. Wyatt Detention Facility in Central Falls, Rhode Island. ECF No. 1. He seeks immediate release from ICE custody, as well as an order restoring him to his prior Order of Supervision. *Id.* at 12. The Government opposes Mr. Deng's petition, claiming that he was properly detained under 8 U.S.C. § 1231. ECF No. 5. For the reasons that follow, the Court GRANTS Mr. Deng's petition and ORDERS his immediate release, subject to the conditions of his preexisting Order of Supervision.

I.  BACKGROUND

Mr. Deng is a native of China who arrived in the United States as a teenager in 1998.  ECF No. 1 at 6.  He later became a Lawful Permanent Resident ("LPR") in 2002.  ECF No. 5-1 at 2.

On or about June 7, 2006, Mr. Deng was found guilty in Minnesota state court of criminal sexual conduct in the third degree.  *Id.* at 3.  He was sentenced to four years in prison and fifteen years of probation.  *Id.*

Following his release from prison, ICE officers encountered Mr. Deng on or about May 16, 2012.  *Id.*  He was detained and charged with being removable due to his conviction qualifying as an "aggravated felony" under 8 U.S.C. § 1227(a)(2)(A)(iii).[1]  *Id.*  An immigration judge ("IJ") ordered Mr. Deng removed to China on or about June 11, 2012.  *Id.*  Mr. Deng did not appeal that decision to the Board of Immigration Appeals ("BIA").  *Id.*

On or about September 12, 2012, ICE released Mr. Deng from custody on an Order of Supervision.  *Id.*  He remained on supervised released for more than thirteen years.  ECF No. 1 at 7.  During that time, Mr. Deng complied with all of the conditions of his release and attended regular check-ins with ICE.  *Id.*

Then, on November 18, 2025, Mr. Deng appeared for a check-in at ICE's Boston Field Office in Burlington, Massachusetts.  *Id.*  During that check-in, ICE officers told

---

[1] Under this provision of the Immigration and Nationality Act ("INA"), noncitizens who are convicted of an "aggravated felony" after admission into the United States are removable.  *Whyte v. Lynch*, 807 F.3d 463, 466 (1st Cir. 2015) (quoting 8 U.S.C. § 1227(a)(2)(A)(iii)).

2

Mr. Deng that his supervised release had been revoked, and they took him into custody. *Id.* He was later transferred to the Donald W. Wyatt Detention Facility in Central Falls, Rhode Island. *Id.*

In a declaration, ICE's Assistant Field Office Director Mark Anzelmo states that Mr. Deng's Order of Supervision was revoked "because the purposes of release had been served, and it was appropriate to enforce his removal order." ECF No. 5-1 at 3. He further alleges that, on or about November 21, 2025, an ICE officer served Mr. Deng with a Notice of Revocation of Release and "conducted an informal interview to allow him an opportunity to respond to the reasons for revocation of the order of supervision." *Id.* at 4. Mr. Anzelmo states that, during the informal interview, Mr. Deng "provided a written statement, and he did not provide any documents." *Id.*

Mr. Deng filed the instant petition on February 25, 2026, challenging his re-detention and the revocation of his supervised release. ECF No. 1. However, "given the filing of the habeas petition," Mr. Anzelmo says that "ICE is working to expedite" Mr. Deng's removal. ECF No. 5-1 at 4.

Specifically, Mr. Anzelmo avers that "ICE has been working diligently to prepare [a] travel document request for China." *Id.* He states that "China is reviewing a proposal for a charter during the month of March for repatriation of three hundred (300) Chinese nationals." *Id.* Mr. Anzelmo further asserts that ICE has contacted an attaché of the Chinese government who "intends to add [Mr. Deng] to

3

the charter list when the Government of China agrees to the charter and if [Mr. Deng's] nationality is verified with the Government of China." *Id.*

## II. DISCUSSION

Section 1231(a) of the Immigration and Nationality Act ("INA") authorizes the Department of Homeland Security ("DHS") to detain noncitizens who are subject to "administratively final" orders of removal. 8 U.S.C. § 1231(a)(1)(B)(i). An important caveat is that a noncitizen's removal must occur within a 90-day removal period, after which the noncitizen is subject to discretionary detention, meaning that they "'may be detained'[2] or may be released under terms of supervision." *Johnson v. Arteaga-Martinez*, 596 U.S. 573, 575 (2022) (quoting 8 U.S.C. § 1231(a)(6)).

Although Section 1231(a) does not specify how long DHS may subject a noncitizen to discretionary detention following the 90-day removal period, the Supreme Court has read an implicit limitation into the statute and stated that it "does not permit indefinite detention." *Zadvydas v. Davis*, 533 U.S. 678, 689 (2001). Rather, the Court held that a noncitizen's detention is "presumptively reasonable" for up to six months. *Id.* at 701.

After the six months are up, the noncitizen may obtain release from detention if they can "provide[ ] good reason to believe that there is no significant likelihood of

---

[2] After the 90-day removal period, the Government "may" detain only four categories of noncitizens: "(1) those who are 'inadmissible' on certain specified grounds; (2) those who are 'removable' on certain specified grounds; (3) those it determines 'to be a risk to the community'; and (4) those it determines to be 'unlikely to comply with the order of removal.'" *Arteaga-Martinez*, 596 U.S. at 578-79 (quoting 8 U.S.C. § 1231(a)(6)).

removal in the reasonably foreseeable future." *Id.* The burden then shifts to the Government to either rebut this showing or release the noncitizen. *Id.* at 699-700.

In its opposition to his petition, the Government argues that the *Zadvydas* framework applies to Mr. Deng's circumstances, and that his detention is "presumptively reasonable" because he has been in ICE custody for fewer than six months. ECF No. 5 at 4. On this point, the Government is mistaken because Mr. Deng has been detained for *longer* than six months. Following his release from prison, ICE officers detained Mr. Deng for about five months from May 2012 to September 2012. *See* ECF No. 5-1 at 3. ICE then re-detained Mr. Deng in November 2025, and he has remained in detention ever since. *Id.* That amounts to nearly nine months of detention, meaning that his detention is no longer "presumptively reasonable" under *Zadvydas*.[3] 533 U.S. at 701.

The Government's argument is unconvincing for another reason, which is that the *Zadvydas* framework no longer applies to Mr. Deng's circumstances. *Zadvydas* specifically concerned "ICE's authority to detain *in the first place* upon an issuance of a final order of removal." *Nguyen v. Hyde*, 788 F. Supp. 3d 144, 149 (D. Mass. 2025) (emphasis added). Because Mr. Deng previously obtained release on an order

---

[3] This Court has previously expressed alarm regarding the Government's position that the "presumptively reasonable" six-month clock simply resets once ICE releases and then re-detains a noncitizen. *See Hall v. Nessinger*, No. 25-cv-667-JJM-PAS, 2026 WL 18583, at *6 (D.R.I. Jan. 2, 2026); *Bulle v. Wesling*, No. 26-cv-019-JJM-AEM, 2026 WL 183840, at *4 (D.R.I. Jan. 23, 2026). This would, in essence, lead to "indefinite detention," which runs counter to *Zadvydas*. *See* 533 U.S. at 690 (recognizing that the "indefinite detention" of a noncitizen "would raise a serious constitutional problem").

of supervision following a final order of removal, and has now been re-detained, his case is instead governed by 8 C.F.R. § 241.13(i). *Id.*

Section 241.13 provides that ICE may revoke a noncitizen's supervised release if "on account of changed circumstances, [ICE] determines that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2).[4] The First Circuit has provided ICE with four key elements that it must meet in order to re-detain a noncitizen, like Mr. Deng, pursuant to this regulation: "(1) an individualized determination (2) by ICE that, (3) based on changed circumstances, (4) removal has become significantly likely in the reasonably foreseeable future." *Kong v. United States*, 62 F.4th 608, 619-20 (1st Cir. 2023) (citing 8 C.F.R. § 241.13(i)(2)). A reviewing court, such as this one, is not permitted to make the individualized finding in the first instance; rather, it must review the finding "in light of the regulations instructing ICE on how it should make such a determination." *Id.* at 620 (citing 8 C.F.R. §§ 241.13(f), (i)(2)). The burden is on the Government to show that the noncitizen's removal is significantly likely to occur in the reasonably foreseeable future. *See Hall v. Nessinger*, No. 25-cv-667, 2026 WL 18583, at *7 (D.R.I. Jan. 2, 2026) (collecting cases).

---

[4] Another regulation permits ICE to revoke a noncitizen's supervised release if he "violates any of the conditions of release." 8 C.F.R. § 241.13(i)(1). However, the Government does not contend that Mr. Deng violated any of the conditions of his release. Indeed, Mr. Deng was arrested as he was fulfilling one of the conditions of his release, which was appearing for a check-in with ICE. *See* ECF No. 1 at 7; ECF No. 6 at 2.

6

Turning to the facts of Mr. Deng's case, it is clear that the justification provided by ICE for his re-detention fails to meet the standards set forth in 8 C.F.R. § 241.13(i). After more than thirteen years of being out on supervised release, ICE officers arrested and re-detained Mr. Deng on November 18, 2025, as he appeared for an ICE check-in appointment. ECF No. 1 at 2. According to Mr. Anzelmo's declaration,[5] Mr. Deng's order of supervision was revoked "because the purposes of release had been served, and it was appropriate to enforce his removal order." ECF No. 5-1 at 3; *see* 8 C.F.R. § 241.4(*l*)2) (providing that DHS may revoke supervised release if an official determines that "the purposes of release have been served" or if "[i]t is appropriate to enforce a removal order").

Notably missing from Mr. Anzelmo's declaration are any reasons as to *why* the purposes of release had been served or *why* it was appropriate to enforce Mr. Deng's removal order now, thirteen years after it had been entered by the IJ. But it is not just the Court that wants answers to these questions; due process *requires* the Government to provide Mr. Deng with these answers. Under ICE's own regulation, "in order to revoke conditional release, the Government must provide adequate notice" and give the noncitizen "an opportunity to respond to the reasons" offered for the revocation. *Noem v. Abrego Garcia*, 604 U.S. ----, 145 S. Ct. 1017, 1019 (2025)

---

[5] The Government did not provide the Court with a copy of the "Notice of Revocation of Release" that ICE is required to issue to noncitizens upon their re-detention. *See* 8 C.F.R. § 241.13(i)(3). This Court has previously stressed the importance of the Government supplying this Notice to the Court so that it can be assured of ICE's compliance with the notice requirement contained in 8 C.F.R. § 241.13(i)(3). *See Bulle*, 2026 WL 183840, at *6.

7

(statement of Sotomayor, J.) (quoting 8 C.F.R. § 241.4(*l*))(1)); *see also Mard v. Town of Amherst*, 350 F.3d 184, 189 (1st Cir. 2003) (explaining that "[t]he purpose of notice under the Due Process Clause is to apprise the affected individual of, and permit adequate preparation for," the opportunity to be heard (quoting *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 14 (1978))).

Without more, ICE's conclusory assertions that "the purposes of release had been served" and that "it was appropriate to enforce his removal order" failed to provide Mr. Deng with adequate notice of the reason for the revocation of his Order of Supervision. *See Perez-Escobar v. Moniz*, 792 F. Supp. 3d 224, 226 (D. Mass. 2025) ("ICE's conclusory explanation for revoking Petitioner's release did not offer him adequate notice of the basis for the revocation decision such that he could meaningfully respond at the post-detention 'informal interview.'"). Also, if this was all that ICE had to offer, then it cannot realistically be said that Mr. Deng was given any meaningful opportunity to challenge the revocation at his post-detention "informal interview." *See Hashemi v. Noem*, No. 2:25-cv-10335-HDV-SR, --- F. Supp. 3d ----, 2025 WL 3468694, at *5 (C.D. Cal. Nov. 19, 2025) (reasoning that, to be regulation-compliant, a notice of revocation is not required to "include any particular magic words; but it must provide real, specific, concrete information that a noncitizen could actually respond to").

If anything, Mr. Anzelmo's declaration makes clear that it is wholly inappropriate to enforce Mr. Deng's removal order at this time. By his own admission, Mr. Anzelmo concedes that ICE does not have a travel document to

8

process Mr. Deng's removal. ECF No. 5-1 at 4. Critically, Mr. Anzelmo acknowledges that ICE did not even submit a travel document request for Mr. Deng until February 3, 2026. *Id.* That is to say that the purported rationale for revoking Mr. Deng's supervised release did not materialize until more than two and a half months *after* he was re-detained. As this Court has warned before, ICE's pattern of detaining first and seeking justification for those detentions months after the fact should be cause for concern. *See Hall*, 2026 WL 18583, at *8.

Nor can ICE fairly claim that circumstances have changed such that Mr. Deng's removal is significantly likely to occur in the reasonably foreseeable future. *See* 8 C.F.R. §§ 241.13(i)(2); *Kong*, 62 F.4th at 619-20. Mr. Anzelmo merely states that a travel document request has been submitted, and that an attaché intends to add Mr. Deng's name to a list of Chinese nationals that China will then consider accepting as part of a repatriation agreement with the United States. ECF No. 5-1 at 4.

But this tells the Court nothing about how long this process will take and, as a result, how many additional months Mr. Deng will be forced to sit in a detention facility. *See Nguyen*, 2026 WL 125093, at *4 ("The Respondents have presented nothing from which this Court can even begin to estimate the length of time the document processing may take."); *Hamidi v. Bondi*, No. CIV-25-1205-G, 2025 WL 4034263, at *6 (W.D. Okla. Nov. 14, 2025) ("Respondents' contention that Petitioner could be removed to a third country 'at some point in the future' … does not establish a reasonable timeline.").

9

Mr. Anzelmo essentially offers that Mr. Deng's removal remains a work in progress, but this falls woefully short of justifying the revocation of his supervised release and subsequent re-detention. *See, e.g., Bulle v. Wesling*, No. 26-cv-019-JJM-AEM, 2026 WL 183840, at *8 (D.R.I. Jan. 23, 2026) (finding the Government's assertion that it is "actively working to obtain travel papers" for a noncitizen's removal to a third country to be insufficient to justify his re-detention); *Lu v. Joyce*, No. 2:26-cv-00041-SDN, 2026 WL 352447, at *3 (D. Me. Feb. 9, 2026) (finding insufficient the Government's assertion that a noncitizen's "document request is pending with the Chinese government" so as to constitute "changed circumstances").

Taken altogether, it is clear to the Court that ICE has failed to comply with 8 C.F.R. § 241.13(i)(2). The agency cannot point to any changed circumstances in Mr. Deng's case, and it has not established that his removal is significantly likely to occur in the reasonably foreseeable future. *See Kong*, 62 F.4th at 619-20.

The Court therefore finds ICE's revocation of Mr. Deng's supervised release and his subsequent re-detention to be unlawful. Mr. Deng shall be immediately released from custody, subject to the conditions of his preexisting Order of Supervision. *See Nguyen*, 788 F. Supp. 3d at 153 (ordering similar relief); *Hall*, 2026 WL 18583, at *9 (same); *Bulle*, 2026 WL 183840, at *9 (same).

## III. CONCLUSION

For these reasons, the Court GRANTS Mr. Deng's habeas petition. ECF No. 1. The Government is hereby ORDERED to **release Ying Liang Deng immediately**, and he shall be subject to the conditions of his preexisting Order of Supervision.

IT IS SO ORDERED.

_____
JOHN J. MCCONNELL, JR.
Chief Judge
United States District Court

DATE: March 9th, 2026

11